### FEDERAL RESERVE BANK OF RICHMOND

v.

### Marcellus WRIGHT, Jr., et al.

### Civ. A. No. 74-0253-R.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 26, 1975.

As Amended March 7, 1975.

William D. Martin, III, Richmond, Va., David V. Anthony, Washington, D. C., for plaintiff.

Willard I. Walker, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff Federal Reserve Bank of Richmond, Virginia, brings this action against Marcellus Wright, Jr., and other architects (hereafter "architects"), for damages suffered by virtue of allegedly faulty architectural services rendered by defendants. Jurisdiction is attained pursuant to 28 U.S.C. § 1331 and 12 U. S.C. § 632. This matter is presently before the Court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted, and because the action is barred by the applicable statutes of limitation.

The stipulated facts are as follows:

On 5 November 1964, plaintiff and the architects entered into a contract where-

in the architects agreed to provide architectural, engineering and supervisory services for the design and construction of the Communications and Records Center of the Federal Reserve Bank at Culpeper, Virginia. Because of the unique design of the proposed construction in that the facility was to be built into the side of a mountain and would be almost completely covered by earth, specialized plans and materials were required.

Pursuant to the agreement between the parties, final working drawings and specifications were submitted to plaintiff by the architects in increments during the period of 17–27 June 1966. Following the award of the prime construction contract, excavation of the construction site was commenced on 26 September 1966, and construction was substantially completed when plaintiff's representatives and employees occupied the facility on 22 February 1969. The prime contractor's job superintendent departed from the site on 7 October 1969, and the defendant architects' supervisory clerk of the works left the premises on 30 April 1970.

The amended complaint sets forth three theories of recovery:

 I. Breach of warranty

 II. Tortions breach of duty to exercise reasonable skills, abilities and judgment.

 III. Breach of contract

Defendants' motion to dismiss raises several issues. However, with respect to the breach of warranty and tort theories, only the plea of the statute of limitations need be considered.[1]

*I. Breach of Warranty; II. Tort*

The complaint was filed on 31 May 1974. However, prior thereto, on 1 August 1973, the parties entered into negotiations in an attempt to avoid litigation. In return for plaintiff's promise not to initiate legal action during the course of those negotiations, defendants agreed to stipulate that for purposes of determining the bar of the statute of limitations should subsequent legal recourse become necessary, this action should be treated as having been filed on 1 August 1973.

The applicable statutes of limitation are supplied by the law of Virginia. *See* Hospelhorn v. Corbin, 179 Va. 348, 19 S.E.2d 72 (1942); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Defendants maintain that plaintiff's claims are barred in their entirety by certain Virginia statutes of limitation, namely, Va.Code Ann. §§ 8–13, 8–24 and 8–24.2 (Supp.1974).

Plaintiff's primary position is that the enactment of § 8–24.2 in 1964 had the effect of superceding the usual statutes of limitation which would otherwise apply to the types of actions set forth in the complaint. Plaintiff contends that any suit for damages resulting from faulty design or construction of improvements to real property can be brought at any time within five years after the performance or furnishing of such services and construction. Plaintiff interprets the five year limitation period provided in § 8–24.2 as one which commences only after completion of the entire project upon which any cause of action in connection therewith is predicated. Plaintiff concludes therefrom that in measuring the five year period from the earliest stipulated completion date, 22 February 1969, the action in its entirety has been timely filed.

Defendants maintain, however, that § 8–24.2 is not a statute of limitations at all, but rather a legislative means of providing immunity from suit to limited

[1]. The Virginia cases seem to indicate that if an architect fails to use reasonable care in the preparation of plans and designs, he may be sued for breach of an implied term of his contract or in tort for negligence. However, the law controlling the duties of an architect in the above circumstances generally is cast in tort language. *See* Surf Realty Corp. v. Standing, 195 Va. 431, 78 S.E.2d 901 (1953); Willner v. Woodward, 201 Va. 104, 109 S.E.2d 132.

classes of individuals named in the statute. After the specified period of time this class may not be sued irrespective of when a claimant actually incurs injury.

The disputed portions of the code provision are as follows:

No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing or furnishing the design, planning, .surveying, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.

\* \* \* \* \* \*

There are few cases applying Virginia law which deal with the precise nature and objective of the quoted section. *See* Wiggins v. Proctor & Schwartz, Inc., 330 F.Supp. 350 (E.D.Va.1971); Smith v. Allen-Bradley Company, et al., 371 F. Supp. 698 (W.D.Va.1974). Therefore, the Court must endeavor to arrive at the proper construction with the assistance of these cases along with other available authorities.

■ Upon analyzing § 8–24.2, the Court is of the view that it does not constitute a statute of limitations in the strict sense. In other words, § 8–24.2 imposes an outside time limit beyond which an action for damages resulting from improper design, construction or supervision of improvements to realty may not be maintained. The statute, by its wording does not require that every

action to which it applies shall be brought within the specified period of time provided therein, as is typical of statutes of limitation generally. *See, e. g.,* Va.Code Ann. §§ 8–13, 8–24 (Supp. 1974). Rather, it requires that no action to recover damages of the type specified shall be brought more than five years after the performance or furnishing of such services and construction.

Perhaps even more significant is the fact that the event triggering the commencement of the limitation period is not the date on which a particular cause of action accrues, but rather the date of "the performance or furnishing of such services and construction." In effect, the statute says that no matter when a cause of action accrues, those involved in the design, planning and construction of improvements to realty cannot be sued after five years from completion of the services and construction.

Therefore, in the context of the instant action, § 8–24.2 merely imposes an "outside limit" within which the customary statutes of limitation continue to operate. For example, if a cause of action for personal injuries accrues one year after completion of construction of a building as a result of faulty workmanship, § 8–24 of the Va.Code regarding personal injury actions would impose a two year limit on the plaintiff's right to bring an action for damages against the negligent builder. This is so notwithstanding the fact that the five year outside limit provided in § 8–24.2 had not yet expired. In the above example, only if the injury occurred at least one day more than three years after completion of construction would § 8–24.2 have any limiting effect on the plaintiff's right to sue.[2]

2. Indeed, it may well be that § 8–24.2 has no application to this or any other action between plaintiff-owners and defendant-architects or builders. The Court has been unable to conceive of a time frame under which either § 8–13 or § 8–24 would not be the sole limitation on a plaintiff-owner's

right to sue. It is conceivable that limitations imposed by § 8–13 and § 8–24 might expire simultaneously with the five-year period of § 8–24.2, but never would § 8–13 and § 8–24 extend beyond § 8–24.2. If the Court is correct, then § 8–24.2 would necessarily be limited to personal injury and prop-

The remaining question is whether the statute contemplates more than one commencement date depending on whether the cause of action arises from negligent design or from negligent construction. The wording of the statute itself is of little assistance in this regard. The Court holds then, that a reasonable construction of the statute would suggest a single limitation period to run from the final completion date of the entire project, whether the claim arises from faulty design or from faulty construction.[3]

Applying the above interpretation of § 8–24.2 to the facts of this case, the five-year outside limit is measured from 22 February 1969, the approximate completion date of the entire project, so that any action relating to the design or construction of the facility which might have been filed prior to 22 February 1974, would be timely insofar as that statute is concerned. However, this conclusion is not dispositive of the issues raised by defendants' motion, and we must therefore examine the effect of the remaining statutes of limitation which operate within the outside limit of § 8–24.2.

Section 8–24 of the Virginia Code provides a limitation period with respect to actions for which no limitation is otherwise prescribed. For personal actions encompassed within § 8–24, a five year limitation is imposed if the action would survive the claimant's death; if the action would not survive, the period is one year.

Plaintiff alleges that the architects warranted that the drawings and specifications relating to the project were properly prepared and designed, and that as a result of allegedly breaching their warranty, the architects are liable to plaintiffs for all damages resulting from the defective plans. Defendants' plea of the statute of limitations poses the crucial question of when did plaintiff's cause of action accrue for damages arising from the alleged breach of warranty and failure to exercise reasonable skills.

In Richmond Redev. and Housing Auth. v. Laburnum Const. Corp., 195 Va. 827, 80 S.E.2d 574 (1954), the Virginia Supreme Court ruled that a claim for property damage predicated on a tort theory arises at the time the defect or condition causing the breach occurs. In Laburnum an underground gas line was defectively installed in a newly constructed dwelling unit. Several years later the collected gas which had leaked as a result of the defect exploded. Plaintiff's building suffered extensive damage. The faulty gas line had been buried six feet underground, thus making discovery of the defect highly improbable prior to the explosion. Nonetheless, the Court held that plaintiff's action accrued at the time the pipe was installed and not when the explosion occurred. Further, the Court explained that damages caused by the explosion were indirect or consequential. The direct damages in violation of the warranty upon which the action was based were limited to the faulty installation of the pipe itself The Court added that "the difficulty in ascertaining the fact that a cause of action exists plays no part in the general rule."

■ Applying this reasoning to the instant causes of action for (1) tortious breach of implied warranty that the drawings and specifications were prop-

---

erty damage actions, the assertion of which is not dependent on a plaintiff's incidental capacity as an owner or occupier of the improved realty, and even then, the constitutionality of the statute would be suspect. *See* Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974).

3. The Court is buttressed in this view by the reasoning of the Supreme Court of Wiscon-

sin in Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974). There, confronted with a statute almost identical to Va.Code Ann. § 8–24.2 (Supp.1974), the Court questioned its constitutionality and interpreted the statute's limitation period to commence at the latest possible time—final completion of construction—to avoid a constitutional decision.

erly prepared, and for (2) tortious breach of the architects' duty to exercise their reasonable skills, ability and judg-· ment in the preparation of such plans, the cause of action for direct damages from both accrued at the time the defective work was performed, not at the time the damages resulting from the breaches were discovered.[4]

The stipulated facts disclose that the final drawings were tendered and accepted in increments during the period of 17–27 June 1966. Therefore, the date of tender, that is, the date upon which the architects delivered the defective plans, was the date on which any direct damage for breach of that obligation would have been suffered. At that point plaintiff's cause of action for defective plans and for failure to exercise reasonable skills accrued, and from that point the appropriate limitation period must be measured.[5]

In considering whether the one or the five year limitation period under § 8–24 is applicable, the Court in *Laburnum* held that an action survives and the five year period applies when "the damage for which recovery is sought is the direct result of the wrong." *Laburnum*, 80 S.E.2d at 579. If the action is one for indirect damages, it does not survive and the one year statute applies. Thus, in *Laburnum*, damages resulting from the explosion of the leaking gas were consequential in that they indirectly resulted from the faulty installation.

Plaintiff herein seeks damages in the amount necessary to correct the various structural deficiencies which allegedly resulted from defective plans. Under *Laburnum*, these would clearly be indirect damages flowing from the primary breach. As such, the action would not survive, and the one year limitation in § 8–24 would apply.

However, given the conclusion that plaintiff's cause of action for defective plans accrued on date of tender (June 1966), the direct-indirect distinction is unnecessary in determining the timeliness of plaintiff's action. Insofar as tort and warranty theories are concerned the effective filing date of the complaint is 1 August 1973, over seven years subsequent to the date of breach. Those actions are barred by either the one or the five year rule.

Accordingly, defendants' motion with respect to the above theories must be sustained and the causes of action predicated thereon dismissed.

### III. Breach of Contract

Plaintiff alleges that under the contract for architectural services, the architects were obligated to perform supervisory duties during the course of construction of the facility and that by failing properly to supervise the various stages of construction, the architects breached their contract. In support of their motion to dismiss, architects contend that under the wording of the contract itself they are not responsible for defective workmanship of the contractor. They argue that their supervisory duties as defined in the contract render insufficient as a matter of law the claim against them for failure to detect errors in the contractor's performance.

After reviewing the contract and the pleadings, the Court is of the view that plaintiff has stated a cause of action for breach of contract in failing to properly supervise the construction of the facility. Such a contractual provision would be meaningless were the architects not responsible, at least to some extent, for detecting and correcting material deviations by the contractor from the requirements of the plans and speci-

---

4. This Court reached the same conclusion on similar facts in McCloskey & Company, Inc. v. Wright, 363 F.Supp. 223 (E.D.Va.1973).

5. This may not be an unreasonable result in that plaintiff could have sued architects for breach of contract, breach of warranty, or in tort at the time of tender, seeking either specific performance to rectify the deficiencies, or damages in the amount of expense necessary to obtain plans of the type bargained for.

fications. *See* Surf Realty Corp. v. Standing, 195 Va. 431, 78 S.E.2d 901, (1953). Evidence and law relating to the degree of responsibility required by architects acting in a supervisory capacity may be developed at or before trial. However, at this point plaintiffs should not be forclosed from developing their case in this regard. The question of whether the architects contributed to the structural defects by failing properly to supervise the work of the contractors, is an issue of fact to be resolved at trial.

Having determined that a cause of action exists the Court must consider the next issue raised by defendants' motion to dismiss. They say the alleged contractual breaches are barred by the Virginia statute of limitations relating to actions ex contractu. Section 8-13 of the Virginia Code provides a five-year limitation for contracts in writing and not under seal. "[T]he statute begins to run from the time of a violation or breach of a legal duty or obligation owed a plaintiff by a defendant." McCloskey & Company v. Wright, 363 F. Supp. 223, 225 (E.D.Va.1973). There are five distinct phases of construction wherein plaintiff alleges that architects breached the contract by failing to supervise the building contractors' performance. These stages are designated individually under each of the first five counts of the complaint, and will be dealt with accordingly.[6]

### Count I

Count I alleges, *inter alia,* that defendants failed to properly supervise the excavation of the building site and construction of the rear or "east wall" of the facility. Because the facility was to be built into the side of a mountain, and would be for the most part underground, the east wall had to be designed in such a way as to withstand the lateral pressure exerted by the backfill earth behind the wall. It is alleged that while defendants' authorized representatives were present on the job site, the contractors were allowed by defendants to excavate well beyond the point specified in the designs and drawings; that the excessive excavation required excessive backfill; that the excessive volume of backfill exerted unplanned lateral pressure on the east wall; and that the increased lateral pressure against the east wall caused the entire building to deflect inward, resulting in serious cracks and weaknesses throughout the entire structure. Plaintiff claims that the architects' failure to detect the contractor's deviation from the plan, or their failure to redesign the wall so as to compensate for these deviations amounted to a breach of their contractual duties to supervise construction.

In Virginia, a cause of action is not deemed to have accrued until the last event completing the cause of action has taken place. *See* Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257 (1969); Sides v. Richard Machine Works, Inc., 406 F.2d 445 (4th Cir. 1969). Under this reasoning, the architects' alleged failure to supervise the procedures leading up to the completion of the east wall had not become complete until the last opportunity had passed for the architects to correct the fault. *See* M. F. and G. Trading Co. v. Jensen et al., 200 Va. 744, 107 S.E.2d 441 (1959). Since backfilling the wall was the final stage in the completion of the wall, and such backfilling also constituted the last opportunity which the architects had to diagnose and correct the alleged deficiency, then completion of the backfilling marked the date of the alleged breach under Count 1, and the date from which the statute began to run.

The parties have stipulated that "construction" of the east wall was completed on or about 30 March 1968. However, because the architectural design

---

6. This step by step approach was conceived in Richmond Redev. and Housing Auth. v. Laburnum Constr. Corp., 195 Va. 827, 80 S. E.2d 574 (1954), and subsequently adopted by this Court in McCloskey & Co., Inc. v. Wright, 363 F.Supp. 223 (E.D.Va.1973).

provided for a water storage vault to be embedded in the mountain behind the wall, with water lines connecting the vault with the building, backfilling the excavated area behind the wall could not be completed until the water vault and the connecting water lines had been installed. Thus, the architects' final opportunity to observe and correct the alleged deficiencies regarding the construction of the east wall was not forclosed until the water lines were installed and then covered with earth.

It is stipulated that backfill was placed around the water pipes during the period of 4–10 August 1968. Since it is alleged that it was the excessive weight and volume of backfill that caused the failure of the east wall and since the backfilling was completed a few days after 1 August 1968, the five-year statute under § 8–13 permits the Court to hold that the action regarding the architects' failure to properly supervise the construction of the east wall has been timely filed.

### Count II

■ The design and specifications provided for the installation of beams to support the roof over the main security court in the center of the building. The beams were designed so as to permit the weight of the terrace supported by the roof to cause enough of a sag to allow for proper drainage on the terrace. When it became apparent that the desired sag had not resulted as planned, it is alleged that the architects improperly authorized a deficient method of "detensioning" the beams in an attempt to achieve the desired effect. When the beams were detensioned large cracks developed in the concrete, and several of the beams almost failed completely.

The de-tensioning process was undertaken during the period of 14–21 September 1968. Since the claim for damages resulting from this procedure was filed within five years from 21 September 1968 this aspect of plaintiff's claim is not barred.

### Count III

■ Count III alleges that architects breached the contract by failing properly to supervise the construction of the north terrace of the facility. Specifically, it is alleged that defendants' representatives allowed the contractors to construct the terrace and implant snow-melting cables therein, in a manner at variance with the plans and specifications and as a result cracks developed, requiring extensive repairs and replacements to certain portions of the terrace and to the snow-melting cable imbedded therein.

As the claim regarding this phase of construction was filed within five years of 19 October 1968, the date on which the terrace was substantially completed, and the last day during which the contractually required supervision might have avoided damage, the cause of action alleged in Count III has been timely filed.

### Count IV

■ Count IV alleges that defendants improperly supervised the application of waterproofing protection and insulation to the entire building. By failing to supervise and provide guidance during the installation of the waterproofing membrane, it is alleged that defendants are liable for all damages and repair costs resulting from the improper installation.

The initial application of the waterproofing membrane was completed by 25 November 1968. The cause of action relating to improper supervision of the above procedure having been asserted within five years of the date of completion, it is not barred.

### Count V

■ This count relates to the installation of the water vault system as described under Count I above. It is alleged that because the contractors were permitted to excavate well beyond the point behind the east wall specified in the designs, the water pipes connecting

the storage vault to the building were supported to a greater extent by loose earth backfill rather than by solid ground. Solid ground support had been specified. Because defendant failed properly to supervise the excavation and take corrective action to insure that the pipes adequately would be supported, the settling of the loose earth behind the wall caused the pipes to settle, with the result that many of the pipes shifted, cracked, and began to leak.

As pointed out in Count I, backfill was placed around the water pipes during 4–10 August 1968. Since the complaint was filed within five years from 10 August 1968, the action relating to supervision of the installation of the water pipes is not barred.

### Count VI

Count VI involves damages alleged to have resulted from certain omissions and deficiencies in the designs and specifications, necessitating the issuance of numerous change orders during the course of construction. As we have already indicated, a cause of action arising from faulty plans accrues upon tender of such plans. Further, damages arising from the implementation of deficient plans are indirect consequences of such primary breach.

Indirect damages, since they do not survive, are barred after one year under § 8–24. *Laburnum, supra.* Since the plans were tendered more than five years prior to the filing of this action, damages alleged under Count VI are barred under the one year limitation period imposed by § 8–24. Even if it be considered that damages from excessive change orders were a direct consequence of the defective plans, the five-year limitation under § 8–24 for damages which survive, would not benefit plaintiff in this case. Under both views the cause of action arose upon tender of the defective plans and this tender occurred more than five years before 1 August 1973.

An appropriate order shall issue.