202 N.J. Super. 387 (1985)
495 A.2d 160
CAROLYN WELCH, PLAINTIFF-APPELLANT,
v.
ENGINEERS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1985.
Decided July 9, 1985.
*388 Before Judges KING, DEIGHAN and BILDER.
Lewis Stein argued the cause for appellant (Nusbaum, Stein, Goldstein & Bronstein, attorneys; Gerald M. Compeau, Jr., on the brief).
Ann C. Crawshaw argued the cause for respondent (R. Gregory Leonard, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
This case requires us to interpret N.J.S.A. 2A:14-1.1, adopted in 1967, the ten-year statute of repose in favor of contractors, engineers and architects who have made improvements to real property, in a situation where design and construction are both undertaken by the same entity. The defect alleged here to have caused plaintiff's injury originated during the design stage. There is no claim of defect arising in the construction phase, other than adherence to the allegedly defective design. Both the design and construction were done by the corporate defendant, Engineers, Inc. (EI), through its agents and employees. The design was created more than ten years before the critical date, the filing of the complaint, which commenced this action. The construction of the project was completed less than ten years from the date of filing of the complaint. We must decide if completion of the design stage alone, when the defect originated beyond the ten-year period, is sufficient to immunize the contractor under a "design-build" contract.
This is the factual background. On March 17, 1980 plaintiff, Carolyn Welch, was an employee of the Knoll Pharmaceutical Company. She claims in her complaint, filed on March 8, 1982, that she "was walking on the pedestrian sidewalk area of the truck dock area" when she fell and was injured due to a "defective and dangerous condition." She alleged that defendant, Engineers, Inc., "was in the business of designing and constructing large commercial and industrial projects" and that *389 it "designed and constructed the truck dock area and pedestrian sidewalk at Knoll Pharmaceutical." She also sued William Godshall, "an architect who designed the truck dock area and pedestrian sidewalk, ... [a] defective and dangerous condition."
Plaintiff was prepared to prove through an engineering expert that the truck dock was poorly designed because of its proximity to the sidewalk where plaintiff fell. The plaintiff's expert reported that "the layout of the truck door area ... was defective" because "the space allowed for truck maneuvering ... did not include sufficient apron maneuvering area." Because there was a pedestrian sidewalk alongside the roadway, trucks "riding up onto the sidewalk due to lack of maneuvering space could be expected to crack and otherwise harm the sidewalk." The plaintiff's expert concluded that a proper layout would have separated the pedestrian sidewalk from the paved access road and maneuvering area or made the maneuvering area larger "to accommodate the type of vehicle used for over-the-road trucking."
Defendant admits that it designed and built the sidewalk and truck dock area. Defendant contends that all design work was completed by March 11, 1971 and all construction work was substantially completed by July 17, 1972. A certificate of occupancy for the facility was issued on November 17, 1972. On the motion for summary judgment, defendant relied on the affidavit of its vice-president who said that "on March 11, 1971, E.I. issued the specifications for the construction of the Knoll Pharmaceutical Facility, Hanover Township, New Jersey. The said specifications included the specifications for the truck dock area and all pedestrian sidewalk areas, more particularly specified in plaintiff's complaint."
Defendant Godshall, an architect employed by defendant EI, designed the truck dock and sidewalk area. The specifications issued on March 11, 1971 were based on his design. Godshall personally obtained a summary judgment on the ground of the ten-year time-bar. There is no appeal from that judgment.
*390 After the specifications were issued on March 11, 1971, defendant EI hired a subcontractor, Morreale Construction Company, to build the sidewalk. Morreale was not sued here because the plaintiff could not prove any construction defect. EI accepted the sidewalk construction and paid its subcontractor for the work. Clearly, EI acted as a developer, general contractor, architect and engineer on the project. EI applied for site-plan approval in June 1970 and thereafter undertook complete design and construction coordination and responsibility until final acceptance and occupancy. This is, in our understanding, a "design-build contract." See Mahony-Troast Constr. v. Supermarkets Gen'l, 189 N.J. Super. 325, 329 (App. Div. 1983).
The Law Division judge granted summary judgment in favor of the defendant EI because the design was completed by its employee-engineer on March 11, 1971  more than ten years before the filing of the complaint on March 8, 1982. The judge found, and all parties appeared to agree, that EI's work on the project "was completed less than ten years prior to the institution of suit." This is true whether we accept EI's assertion of substantial completion on July 27, 1972 or the date of issuance of the certificate of occupancy on November 27, 1972. Summary judgment was granted to EI because the plaintiff was prepared to prove a design defect only. Plaintiff agreed that she could not prove a construction defect. The judge concluded "I think that pursuant to the statute, various aspects are severable" and granted the motion. All parties, including the judge, appear to have assumed that the sidewalk where plaintiff fell was constructed within the ten years before the complaint was filed. We cannot confirm this fact from the record before us but whether or not this is accurate is not critical to our decision. The critical date occurs ten years "after the performance or furnishing of services and construction" by EI for the entire project which it undertook here. We will not break the project down into stages for the benefit of the designer-general contractor.
*391 N.J.S.A. 2A:14-1.1 was enacted as L. 1967, c. 59, § 1, effective May 18, 1967 and states
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
The key words for our purposes are "against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction."
Justice Clifford discussed the reason for passage of this statute of repose in O'Connor v. Abraham Altus, 67 N.J. 106, 117-118 (1975). The advent of the "discovery" rule and the demise of the "completed and accepted rule" appreciably enlarged the potential liability of architects, building contractors, and others who contributed to improvements of real estate. See Rosenberg v. Town of North Bergen, 61 N.J. 190 (1972) (N.J.S.A. 2A:14-1.1 held to apply to "all who can, by a sensible reading of the words of the act, be brought within its ambit"); Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179, 192-193 (App.Div. 1978), certif. den. 79 N.J. 489 (1979). One commentator said this about the development of this statute of repose throughout the country in the 1960's.
In the mid 1960's, faced with what they considered to be an intolerable situation, architects, engineers, and builders, through their respective professional organizations, began a drive to alleviate the undesirable consequences of this wide-spread judicial legislation. The American Institute of Architects [hereinafter AIA], along with the National Society of Professional Engineers and the Associated General Contractors, began to push for model legislation *392 which would substantially curtail the limitless duration of liability imposed upon its members. In the span of approximately two years, 1965-67, thirty jurisdictions enacted or amended statutes of limitations specifically for architects, engineers and builders. Though these statutes are not identical in every respect, there is one characteristic common to all. Each of them sets a definite period of years beginning at the time of completion or acceptance of the work, after which no civil actions against the architect, engineer or builder may be brought. [Note, Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders, 60 Ky.L.J. 462, 464-465 (1972)].
The statute requires "that the complaint be filed within ten years after the completion of the work done." O'Connor v. Abraham Altus, 67 N.J. at 119, n. 5; Richards v. Union Bldg. & Constr. Corp., 130 N.J. Super. 127, 130 (App.Div. 1974) (separate contracts for work on different sections of some highway). In Mahony-Troast Constr. v. Supermarkets Gen'l, 189 N.J. Super. 325, 329 (App.Div. 1983), we expressed this general view on when the ordinary statute of limitations begins to run on a building contract claim.
We are of the view that where, as here, the contract is for the design and construction of a structure (commonly called a design-build contract) the statute of limitations on an action for deficiencies in design or construction commences to run upon substantial completion of the structure. The bar of the statute does not commence to run against the owner as component parts or subcontracts are completed. [189 N.J. Super. at 329].
We there cited authorities that agreed with our conclusion that the statute of limitations is not a severable concept and does not run in stages against the owner and others and in favor of the designer-builder in these situations.
Plaintiff's argue here for a relatively narrow reading of the statute, pointing out that it was the product of vigorous and successful lobbying by special interests groups and "any lack of clarity in the language of the statute should be construed against the special interests groups which have been effectively granted this partial immunity" from liability by the Legislature as a means of relief from court-expanded principles of common-law liability. In other words, we should not attempt by creative construction to improve upon the precise scope of immunity *393 granted by the Legislature to a favored class, the "improvers of real property."[1]
Plaintiff urges that we adopt the conclusion reached by Wisconsin, the first state to enact such a statute, in Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974), which held that the ten-year period must begin for all involved on the project on the date all construction is completed, notwithstanding when services were rendered. The Wisconsin Supreme Court later found this time-bar statute unconstitutional, Kallas Millwork Corp. v. Square D. Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975). The New Jersey statute has withstood constitutional attack. See Rosenberg v. Town of North Bergen, supra. Plaintiff suggests we adopt the result reached by the federal district court in Federal Reserve Bank of Richmond v. Wright, 392 F. Supp. 1126, 1130 (E.D.Va. 1975),[2] when called upon to construe an identically-worded Virginia statute. The federal judge there held that the time-bar period started to run on the date of the completion of the entire project where the claim was for faulty architectural design services.
The remaining question is whether the statute contemplates more than one commencement date depending on whether the cause of action arises from negligent design or from negligence construction. The wording of the statute itself is of little assistance in this regard. The Court holds then, that a reasonable construction of the statute would suggest a single limitation period *394 to run from the final completion date of the entire project, whether the claim arises from faulty design or from faulty construction.[3]
[3.] The court is buttressed in this view by the reasoning of the Supreme Court of Wisconsin in Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974). There, confronted with a statute almost identical to Va. Code Ann. § 8-24.2 (Supp. 1974), the Court questioned its constitutionality and interpreted the statute's limitation period to commence at the latest possible time  final completion of construction  to avoid a constitutional decision. [Ibid.].
But to make everyone who contributes to the project await the final completion date for the entire project may be going too far.
Plaintiff also relies on Patraka v. Armco Steel Co., 495 F. Supp. 1013, 1019 (M.D.Pa. 1980), a personal injury case construing the Pennsylvania statute which marks the beginning of the period with the date of "completion of construction of such an improvement." In this case the general contractor argued, in effect, that each stage of road construction was "an improvement" and that the liability cut-off should commence with completion of each stage of the project. The federal judge rejected this contention, saying
The Act, like legislation passed in a majority of jurisdictions across the country, cuts off such liability at a point when the legislators, in their collective wisdom, believe that a builder would be unfairly prejudiced in attempting to assert a defense to charges of defective design or construction.
Since the Act is designed to cut off the potential liability caused by abolition of the "completed and accepted" rule, it would seem to follow that the limitations period would begin to run at or near the time the builder is exposed to the additional liability. That is, by employing the phrase "after completion of ... an improvement," it appears that the General Assembly intended to mark the commencement of the limitations period as that point when third-parties would be exposed to any defect in design or construction. This would be when the entire improvement, and not merely a component part, is so far completed that it may be used for its intended purposes by the general public.
Had the legislature intended to have the limitations period begin running at an earlier point they could have, as have other legislatures, stipulated that the period begins to run after completion of the defendant's services. Or the Act could have specified that the period begins to run from the date the defective subpart of the improvement is completed. By using instead the general term "improvement," the conclusion seems inescapable that the General Assembly was referring to the overall improvement under construction. [Ibid.].
*395 Interestingly, Patraka relied on New Jersey case law in rejecting a staged approach to the statute of repose for general contractors: "Finally, the interpretation of the term improvement applied here seems to comport with decisions in other jurisdictions addressing the question of when analogous limitation statutes begin to run under comparable circumstances. See, e.g., O'Connor v. Altus, 67 N.J. 106, 335 A.2d 545, 552 n. 5 (1975); Richards v. Union Building and Construction Corp., 130 N.J. Super. 127, 325 A.2d 831, 832 (1974); Rosenthal v. Kurtz, 62 Wis., 2d 1, 213 N.W.2d 741 (1974)." Id. at 1020.
Plaintiff urges that using the completion date of all construction where defendant is a general contractor or a "design-builder", as here, is the better choice because: (1) that date is most likely to be objectively recorded and memorialized, (2) the completion date is frequently defined in the contract itself, (3) the date of stages of completion may be difficult to agree upon or prove, causing even more disputation and fractionalization of litigation along the way (crossclaims, third-party claims, etc.), and lack of clarity in a particular circumstance, and (4) doubts should be construed against the defendant because the statute is "a grant of immunity from suit," Phillips v. ABC Builders, 611 P.2d 821, 831 (Wyo.Sup.Ct. 1980), which should not be excessively embellished or expanded in defendant's favor where the language is uncertain in application.
Defendant asks us to follow several out-of-state cases with somewhat analogous but not identical fact patterns which favor treating as severable the various functions and stages of design and construction for purposes of the statute of limitations on claims for breach of contract, not for personal injuries. See Comptroller of Virginia, ex rel. Virginia Military Institute v. King, 217 Va. 751, 232 S.E.2d 895 (Sup.Ct. 1977) (cause of action for improper design governed by contract statute of limitations and accrues when plans approved); County of Milwaukee v. Schmidt, Garden & Erikson, 43 Wis.2d 445, 168 N.W.2d 559 (Sup.Ct. 1969) (cause of action accrued for contract statute of limitations purposes when supervision and inspection took *396 place, not on final certification); McCloskey & Company, Inc. v. Wright, 363 F. Supp. 223 (E.D.Va. 1973) (contract statute of limitations construed to separate design and construction function).
We conclude that the plaintiff has the better of the argument in this case where the defendant is both the designer and the builder. We do not find a clear solution in the wording of the statute itself. The functions of design, planning, supervision or construction of improvements to realty could be treated either separately or unitarily when a single defendant performs two or more or indeed all of these functions, as EI did here, without distorting or diluting the language used by the Legislature. On review of the history of these statutes and the reason behind them, we think the Legislature most likely meant that when a person rendered any construction-related services on a particular job, finished them and walked away from the job-site with the work accepted, that person could look back ten years and one day "after the performance or furnishing of such services and construction," N.J.S.A. 2A:14-1.1, and know there was repose from liability. We do not think that the Legislature intended to let repose turn on serial cut-off dates accruing through various stages of the work, turning on fact-sensitive determinations and various analytic approaches to construction staging. The rule we approve here is the easiest to administer and the final date of any particular persons' furnishing services or construction is the simplest to determine. Clarity and certainty in matters of repose and limitation of actions are very legitimate considerations.
Also, the result we reach here is not unfair because the poorly designed sidewalk and truck dock area had to be built before it became a dangerous condition. The faulty condition did not exist until completion of the construction phase and until acceptance by the owner for occupancy. Only after construction did the design defect become manifest. It would be paradoxical *397 to start the ten-year clock running towards repose in favor of the designer-builder before the dangerous condition even existed, other than conceptually.
We are also mindful that we are construing a statute which confers immunity from tort liability. As Justice Handler said in Harrison v. Middlesex Water Company, 80 N.J. 391, 401 (1979), when construing the Landowners' Liability Act, we "must assume that the Legislature is mindful that immunity from liability for the negligent infliction of injury upon others is not favored in the law. It leaves unredressed injury and loss resulting from wrongful conduct." He suggests that statutes "granting immunity from tort liability, should be given narrow range." Ibid. Again, in Renz v. Penn Central Corp., 87 N.J. 437, 457-458 (1981), in construing the railroad immunity act, he said: "In confronting this question we must give full weight to the maxim of statutory construction that the railroad immunity act is, like all immunity statutes, to be strictly and narrowly construed." Id. at 457. He also reminds us of our duty to "preserve for ... legislation a sensible place in the contemporary scene." Id. at 458. But no single rubric is the answer to any particular problem of statutory construction. See Llewellyn, "Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed," 3 Vand.L.Rev. 395, 401 (1950). The entire circumstance must be evaluated.
We conclude that the date when the ten-year time-bar matures under N.J.S.A. 2A:14-1.1 and the period of repose begins must be measured from the final date the person claiming repose and immunity from suit furnishes any and all services or construction which it has undertaken at the job site. We do not condone a piece-meal concept of repose where the contractor is involved in multiple phases of the undertaking.
Reversed.
NOTES
[1] See Easterbrook, "Foreward: The Court and The Economic System," 98 Harv.L.Rev. 4, 52 (1984):

This is not a simplistic "expressio unius est exclusio alterius" approach. The Court does not presume an omniscient legislature that anticipates all problems or provides all solutions. The current approach is based, rather, on a sound appreciation of the difference between interest-group and public-interest legislation. Interest-group legislation requires adherence to the terms of the compromise. The court cannot "improve" on a pact that has no content other than the exact bargain among the competing interests, because the pact has no purpose. Recognition of the way in which economic legislation comes to be thus turns out to have the most fundamental implications for how the Justices approach their functions.
[2] Cited with approval by us in Mahony-Troast Constr. v. Supermarkets Gen'l., 189 N.J. Super. at 329.