242 N.J. Super. 320 (1990)
576 A.2d 921
EMILY S. HOPKINS, PLAINTIFF-RESPONDENT,
v.
FOX & LAZO REALTORS, JACK BURKE REAL ESTATE INC., STEVE FIELDS, PAT GUERRY, JOHN GARVER AND SUSAN GARVER, HIS WIFE, U.S. HOMES, MORGAN M. DAVIS, DOUGLAS M. SONIER AND BARBARA A. SONIER, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 4, 1990.
Decided June 29, 1990.
*321 Before Judges KING, SHEBELL and KEEFE.
Eli Lewis Eytan argued the cause for appellant Morgan M. Davis (Collins & Eytan, attorneys; Eli Lewis Eytan on the brief).
Benjamin N. Cittadino argued the cause for respondent Emily S. Hopkins (Devlin, Cittadino & Shaw, attorneys; John G. Devlin on the letter brief).
Richard J. Sauerwein, attorney for respondents Jack Burke Real Estate, Inc., Fox & Lazo Realtors, Stephen Fields and Pat Guerry, joins in the brief by John G. Devlin but did not appear at oral argument.
*322 Mark J. Kerrigan argued the cause for respondents John Garver and Susan Garver, his wife, (Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
We must decide whether N.J.S.A. 2A:14-1.1 provides architects with repose from liability claims ten years after their design work, their only service, is completed or not until ten years after construction is completed. This tort action arises out of injuries sustained by plaintiff Emily Hopkins from a fall in a private home. Hopkins claims the negligent performance of architectural services by defendant Morgan Davis, a licensed professional architect, contributed to her fall. In this case the architect performed design work only. He performed no supervision of the construction. We hold, in the circumstances of this case, that where an architect performs design services only and no supervision of the project, the period of repose provided by N.J.S.A. 2A:14-1.1 begins ten years and one day after the architect's plans are delivered to and accepted by the developer-contractor.
There is no dispute about the relevant facts. Defendant Davis was commissioned by defendant U.S. Homes to prepare plans for a prototype house. U.S. Homes intended to use the plans in the construction of a residential development in Plainsboro. Davis completed the plans for U.S. Homes on January 12, 1977 and performed no further work or supervision on the house or the development. U.S. Homes used Davis' plans in its construction of the home at 118 Parker Road South in Plainsboro where plaintiff ultimately fell and was injured on April 26, 1987. Building permits for this house were obtained from the Plainsboro Building Department on June 2, 1978. Construction of the home was completed in November 1978, a certificate of occupancy issuing on November 28, 1978. On November 29, 1978 the home was sold and deeded to defendants Douglas and *323 Barbara Sonier, the original buyers. In 1984 the home was sold and transferred to defendants John and Susan Garver.
On April 26, 1987 defendant Fox & Lazo held a realtors' "open house" at the Garver's home. While visiting the "open house," the plaintiff Hopkins fell and suffered "serious personal injuries." As a result of her accident, Hopkins filed this lawsuit. On September 16, 1988 Hopkins filed an amended complaint alleging, among other things, the negligent design of the home in which she fell by a certain as yet unknown architect, John Doe. On April 28, 1989 Hopkins filed a second amended complaint specifically identifying the architect as defendant Morgan Davis.
In November 1989 defendant Davis filed a motion for summary judgment seeking dismissal of the complaint and crossclaim against him. Davis claimed that he was entitled to the repose afforded by N.J.S.A. 2A:14-1.1 which provides, in relevant part, that
[n]o action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. [Emphasis supplied.]
Davis stresses that he completed his design work with respect to the 118 Parker Road South home on January 12, 1977. Because Hopkins' accident did not occur until more than ten years later, on April 26, 1987, any claims which she might assert against him should be time-barred under N.J.S.A. 2A:14-1.1; L. 1967, c. 59 § 1.
Hopkins contests Davis' reading of N.J.S.A. 2A:14-1.1. She urges that the ten-year period provided by the statute should not begin to run until construction of the 118 Parker Road South house was complete, in November 1978. Hopkins began her action within ten years of this date. The Law Division *324 judge adopted Hopkins' position and denied Davis' motion for summary judgment. We granted Davis leave to appeal. R. 2:2-4.
The sole issue is when the ten-year period, following which claims are time-barred under N.J.S.A. 2A:14-1.1, begins to run in favor of an architect who performs no supervision of the work but only furnishes design services. In Welch v. Engineers, Inc., 202 N.J. Super. 387, 397, 495 A.2d 160 (App.Div. 1985), we held that when "the ten-year time-bar matures under N.J.S.A. 2A:14-1.1 and the period of repose begins must be measured from the final date the person claiming repose and immunity from suit furnishes any and all services or construction which it has undertaken at the job site." In Welch, we used the date of project completion as the time when the statute begins to run even though "[t]he defect alleged ... to have caused plaintiff's injury originated during the design stage." Id. at 388, 495 A.2d 160. However, unlike the situation in the present case, the design and construction of the project in Welch were undertaken by the same entity. Id. There, we refused to "condone a piece-meal concept of repose where the contractor is involved in multiple phases of the undertaking." Id. at 397, 495 A.2d 160. In this case we must decide whether the rule adopted in Welch applies to situations where the project's architect acted independently of the project's developer-contractor and where the architect furnished no services or supervision following the acceptance of his plans by that developer-contractor.
The cases from other jurisdictions interpreting statutes similar to New Jersey's are not useful. For example, in Federal Reserve Bank of Richmond v. Wright, 392 F. Supp. 1126 (E.D.Va. 1975), the court, in interpreting a nearly identical Virginia statute, held that "a reasonable construction of the statute would suggest a single limitation period to run from the final completion date of the entire project, whether the claim arises from faulty design or from faulty construction." Id. at 1130. The Wright Court said its opinion was buttressed by the *325 reasoning of the Supreme Court of Wisconsin in Rosenthal v. Kurtz, 62 Wis.2d 1, 213 N.W.2d 741 (1974). In Kurtz, the court was faced with a constitutional challenge to a statute almost identical to Virginia's and New Jersey's. To avoid the constitutional question, the limitation period was deemed to commence at the latest possible time, which meant the completed construction of the project involved. The Wisconsin statute was later declared unconstitutional. Kallas Millwork Corp. v. Square D. Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975). The constitutionality of the New Jersey statute has been upheld. Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662 (1972).
In the Law Division in the case before us, Hopkins urged the judge to follow the maxim of statutory construction which counsels that a statute's grant of immunity from tort liability should be strictly or narrowly construed. In Welch, we noted that we were "mindful" of this principle. Welch, 202 N.J. Super. at 397, 495 A.2d 160. Davis, the architect, counters that N.J.S.A. 2A:14-1.1 "is curative or remedial, and should be given a comprehensive and liberal rather than a technical construction." Hall v. Luby Corp., 232 N.J. Super. 337, 345, 556 A.2d 1317 (Law Div. 1989); 54 C.J.S., Limitations of Actions, § 72 at 107 (1987).
As we noted in Welch, the words of N.J.S.A. 2A:14-1.1 do not provide a clear solution to the problem of determining when the ten-year period begins to run. The statute's language could reasonably be interpreted to support either the view that the ten-year period begins to run when a party completes its own work with respect to a project or, alternatively, when the project which incorporates that person's work is itself completed. "Where a choice must be made between two imperfect interpretations, the view should be selected which more likely accords with the probable legislative intent." County of Monmouth v. Wissell, 68 N.J. 35, 43, 342 A.2d 199 (1975).
In first attempting to discern the legislature's probable intent in enacting N.J.S.A. 2A:14-1.1, in the face of what he described *326 as "meager and unrevealing" legislative history, Justice Mountain identified the two then-recent developments in the law which likely provided the motivation for this legislation. Rosenberg, 61 N.J. at 194-198, 293 A.2d 662. The first development in the law mentioned by Justice Mountain was the advent of the so-called "discovery" rule which "decrees that in appropriate cases a statute of limitations shall not be deemed to run until a wrong has been discovered or should have been discovered...." Id. at 197, 293 A.2d 662. The second development in the law which our Supreme Court believed might have provoked the enactment of N.J.S.A. 2A:14-1.1 was the rejection of the "completed and accepted" rule under which an architect's or a contractor's liability for negligent planning or construction was deemed to terminate upon the work having been accepted by the owner or employer. Id. at 197-198, 293 A.2d 662. Justice Mountain, writing for the Court, concluded
While we are firmly of the opinion that each of these new rules marks an enlightened advance in the field of tort liability, it is nevertheless apparent that their adoption has resulted in an increased exposure on the part of architects, contractors and the like. We think that in enacting N.J.S.A. 2A:14-1.1 the Legislature sought to provide what it deemed to be a reasonable measure of protection against this greater hazard. [Id. at 198, 293 A.2d 662.]
In O'Connor v. Abraham Altus, 67 N.J. 106, 121, 335 A.2d 545 (1975), our Supreme Court identified the following factors frequently advanced in support of statutes of repose such as N.J.S.A. 2A:14-1.1:
1. Potential liability throughout professional life, vulnerability to tenuous claims, defense expense, and onerous record keeping reflect the need for some limitation of liability.
2. Passage of time severely handicaps the defense of an action. Even aside from the obstacles of faded memories, unavailable witnesses and lost evidence, problems of proof are extremely complex not only because of the joint effort involved in initial construction, but also due to any inadequate maintenance, improper use, or improvements and services that may follow. The architect and builder have no control over the owner, whose negligence may be the real cause of dangerous conditions.
3. The injured party retains his remedy against the owners after the statutory period. With the passage of time, the probability increases that improper maintenance, rather than faulty design or construction, is the proximate cause of injury. Thus, some reasonable time limitation for suit is a fair *327 compromise, and statistical data show that 84.3 percent of all claims against architects and builders would be brought within four years. [Comment, "Limitation of Action Statutes for Architects and Builders  Blueprint for Non-action," 18 Cath.U.L.Rev. 361, 384 (1969) (footnotes omitted).]
In Welch, we concluded
On review of the history of these statutes and the reason behind them, we think the Legislature most likely meant that when a person rendered any construction-related services on a particular job, finished them and walked away from the job-site with the work accepted, that person could look back ten years and one day "after the performance or furnishing of such services and construction," N.J.S.A. 2A:14-1.1, and know there was repose from liability. [Welch, 202 N.J. Super. at 396, 495 A.2d 160.]
In view of these considerations, we believe that when an architect, such as defendant Davis here, completes the work for which he was commissioned, he should be able to look back ten years and one day after the completed performance of his work and know there is repose from liability. Plaintiff Hopkins would have this court import notions of discoverability into a statute which most probably was enacted precisely because the Legislature wished to grant those within the statute's ambit protection from lawsuits based upon remotely discovered defects. Rosenberg, 61 N.J. at 197-198, 293 A.2d 662.
Plaintiff also urges that the ten-year statutory period should not be deemed to begin until the defect complained of becomes capable of producing injury. She presents the hypothetical of an architect furnishing a defective design for a project which is not even completed until ten years later. Says the plaintiff, "[i]f the ten year period of repose began to run for the architect on the date he furnished the plans, the injured party would be left without a remedy as the architect would have been immune from liability before his negligent act was even capable of producing an injury. This result was not the intent of the legislature." In Rosenberg, our Supreme Court responded to a similar claim that the statute bars a cause of action before it has arisen:
This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has no cause of action. The harm that *328 has been done is damnum absque injuria  a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. [Rosenberg, 61 N.J. at 199, 293 A.2d 662.]
We conclude that the Legislature's intent in enacting N.J.S.A. 2A:14-1.1 was to grant architects and contractors repose from liability based upon alleged acts of negligence in the distant past. We think that the statute's purpose is best served by finding that the ten-year statutory period begins when the architect or contractor completes its task with respect to the property involved in the claim. While it is true that many of the hazards created by a person's negligence may not become apparent until after the ten-year statutory period has expired, this problem exists even under the construction of this statute which the plaintiff suggests. For example, defective wiring or substandard construction materials may not produce injury until after the ten-year period has expired, even if that period is measured from the date of the project's completion only. However, one must remember that N.J.S.A. 2A:14-1.1 "is not a statute of limitation in the traditional sense; rather, it is a statute of repose conferring immunity 10 years after the performance of services which would have occasioned liability but for the statute, and notwithstanding the fact that the intended useful life of the product may have been for 20 or even 50 years." McCalla v. Harnischfegar Corp., 215 N.J. Super. 160, 166, 521 A.2d 851 (App.Div. 1987). Thus, N.J.S.A. 2A:14-1.1 reflects a legislative policy decision; our task is to interpret the statute in light of that policy. We add that the statute does not preclude suit against those presently in possession of or responsible for the property where the injury occurs, here the realtor running the "open house," Fox & Lazo, and the owners, the Garvers. Even the builder-developer may be liable here because the suit is brought within ten years of its completion of construction services. Plaintiff is not without a remedy.
Adopting the construction of N.J.S.A. 2A:14-1.1 urged by the plaintiff could totally frustrate the Legislature's design to provide repose to those involved in the planning or construction *329 of improvements to realty. For example, an architect may have his plans used in the construction of projects long after his involvement in the project for which his plans were initially drawn. Indeed, the plans could be used indefinitely. Under the plaintiff's interpretation of N.J.S.A. 2A:14-1.1, such an architect may never claim the repose which this statute was intended to provide. As noted in Rosenberg:
There comes a time when he [the defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when "evidence has been lost, memories have faded, and witnesses have disappeared," [Developments in the Law: Statutes of Limitations 63 Harv.L.Rev. 1177, 1185 (1950)] [Rosenberg, 61 N.J. at 201, 293 A.2d 662.]
We hold that in the circumstances presented here, where an architect's plans are used in the construction of a project by an independent developer-contractor, and where the architect performs design services only and no supervision on the project, the period of repose provided by N.J.S.A. 2A:14-1.1 begins ten years and one day after the architect's plans are accepted by the developer-contractor.
Reversed.