SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Perini Corporation (A-121/122/123/135-11) (070558)**

**Argued September 23, 2014 -- Decided April 30, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court must determine when the ten-year limitations period of the statute of repose, N.J.S.A. 2A:14-1.1(a), begins to run with respect to the installation of a high temperature hot water (HTHW) system of a multi-phase construction project. In addition, the Court is asked to decide whether the statute of repose applies to claims pertaining exclusively to allegedly defective materials supplied for the HTHW system.

In February 1995, the State executed a contract with Perini Corporation (Perini) to design and build South Woods in Bridgeton (the Project), a twenty-six building medium- and minimum-security correctional facility. Perini subcontracted with L. Robert Kimball & Associates, Inc. (Kimball) as the architect and engineer. Defendant Natkin & Company (Natkin) was designated the principal contractor for heating, ventilation, and air conditioning (HVAC). The design that Kimball provided to Perini included an underground HTHW distribution system to serve the entire Project. It also included a central plant from which the hot water was distributed to the various buildings that comprised the Project. Perma-Pipe, Inc. (Perma-Pipe) manufactured the underground piping used in the HTHW system. Natkin furnished and installed the underground piping system and the boilers and heat exchangers housed in the central plant. Defendant Jacobs Facilities, Inc. (Jacobs), formerly known as CRSS Constructors, Inc., was retained by the State to provide construction oversight services.

The contract provided that the Project would be constructed in three phases. Phase I included the central plant and certain inmate housing units. Certificates of substantial completion for those elements were executed on May 16, 1997. Approximately 960 inmates occupied the Phase I housing units soon thereafter. Phase IIA included housing units for another 960 inmates. Certificates of substantial completion for those buildings were executed between July 15, 1997 and October 27, 1997. Phase II encompassed approximately ten buildings, including a minimum-security unit housing more than 1000 inmates, with May 1, 1998, as the date of substantial completion. The various buildings comprising the Project were connected to the HTHW distribution system as they were completed. A certificate of substantial completion was not issued specifically for the HTHW system.

On April 28, 2008, the State filed a complaint against Perini, Kimball, Natkin, Jacobs, and Perma-Pipe in which it alleged that the HTHW system failed in March 2000, and on several subsequent occasions, and that these failures were caused by various defects including design defects, defective site preparation for the pipes, defective pipes, and deficient system design. The State asserted breach of contract against Perini, negligence and professional malpractice against Kimball, negligence and breach of contract against Natkin, and breach of contract against Jacobs. Against Perma-Pipe, the State asserted a claim under the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, as well as breach of implied warranties, negligence, and strict liability in tort.

All defendants moved for summary judgment, arguing that the Project was substantially complete well before April 28, 1998, and that, therefore, the statute of repose barred the State's complaint. The State contended that the date of substantial completion of the Project was not until May 1, 1998, if not December 1998. Relying primarily on the occupancy of inmates at the facility on or before April 28, 1998, the court determined that the HTHW system was substantially complete before April 28, 1998. Therefore, the trial court found that the State's complaint was barred by the ten-year statute of repose and granted summary judgment in favor of contractor-defendants Perini, Kimball, Natkin, and Jacobs. On the other hand, the trial court denied Perma-Pipe's motion for summary judgment, concluding that it was a manufacturer of goods and therefore its liability was governed by the PLA and the statute of repose did not apply to it.

The Appellate Division reversed the orders granting summary judgment in favor of defendants Perini,

Kimball, Natkin, and Jacobs. The panel held that the statute of repose was triggered when defendants substantially completed their work on the entire project, no earlier than May 1, 1998, the date when the minimum-security unit and garage were certified as substantially complete. The panel determined that the State's April 28, 2008 complaint was timely filed. In addition, the Appellate Division held that the statute of repose does not bar the State's claims against Perma-Pipe because it was a manufacturer of a product rather than a designer or installer of a system.

The Court granted the contractor-defendants' motions for leave to appeal, 210 N.J. 476 (2012), and Perma-Pipe's cross-motion for leave to appeal, limited to the issue of whether the statute of repose applies to bar the State's claims against it, 211 N.J. 606 (2012).

**HELD**: The statute of repose does not begin to run on claims involving an improvement that serves an entire project such as a high temperature hot water (HTHW) system -- including those parts constructed in multiple, uninterrupted phases -- until all buildings served by the improvement have been connected to it. In addition, the statute of repose does not apply to claims relating solely to manufacturing defects in a product used in the HTHW system.

1. Prior to the enactment of the statute of repose, liability for deficiencies in a construction project was governed by the common law "completed and accepted rule." In Totten v. Gruzen, 52 N.J. 202, 210 (1968), this Court replaced that rule with the limitations on liability derived from ordinary negligence principles. In 1967, New Jersey adopted a statute of repose, N.J.S.A. 2A:14-1.1(a). The statute applies only to work that constitutes an "improvement to real property." Generally, "an improvement to real property permanently increases the property's value." Ebert v. S. Jersey Gas Co., 157 N.J. 135, 139 (1999). (pp. 14-17)

2. Calculation of the ten-year limitations period for the statute of repose generally commences one day after issuance of the certificate of substantial completion for the project. Substantial completion is "the date when construction is sufficiently complete . . . so the owner can occupy or utilize the building." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 117 (1996). When a designer, planner, or person participating in the construction of an improvement to real property has continuing responsibility throughout the construction of the project or a specific improvement, the ten-year limitations period commences when the project has been certified as substantially complete. (pp. 17-20)

3. The HTHW system is an improvement to real property and the work performed on this system falls within the scope of the statute of repose. The HTHW system is designed to form a unified whole that interacts with and is connected to every structure of the prison complex. Neither the nature of the HTHW system, the course of construction, nor defendants' role in the construction of the Project permits the issue date of the Phase I certificates of substantial completion to trigger the statute of repose time calculation. The record also does not support a finding that the HTHW system was substantially complete on May 16, 1997, after the issuance of the certificate of substantial completion for the central plant. As a system designed to supply heat and hot water to every building in the Project, the Court is loath to embrace an application of the statute of repose that would permit separate trigger dates for each section of the HTHW system as a building it serves comes on line. The ten-year statute of repose limitations period commenced to run on the day after the final certificates of substantial completion issued for the final buildings served by the HTHW system. The final certificates were issued on May 1, 1998. The State filed its complaint on April 28, 2008. The statute of repose therefore does not bar the complaint. (pp. 20-27)

4. Manufacturers of standardized products and sellers of such products are not subject to the statute of repose, but rather "are covered by the statute of limitations applicable to the [PLA]." Dziewiecki v. Bakula, 180 N.J. 528, 532 (2004). Perma-Pipe's role was that of a manufacturer of a product used in the construction of the HTHW system. While the piping for the Project served a specialized purpose to meet the specific dimensions and specifications of the system designed by Kimball and installed by Natkin, the piping and the various fittings manufactured by Perma-Pipe are nonetheless a product and Perma-Pipe cannot take refuge in the statute of repose. (pp. 27-30)

The judgment of the Appellate Division is **AFFIRMED** as **MODIFIED**.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN and SOLOMON; and JUDGE FUENTES (temporarily assigned) join in JUDGE CUFF's opinion. JUSTICES LaVECCHIA, PATTERSON and FERNANDEZ-VINA did not participate.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

PERINI CORPORATION, L. ROBERT
KIMBALL & ASSOCIATES, INC.,
PERMA-PIPE, INC., NATKIN &
COMPANY, JACOBS FACILITIES,
INC., Successor-in-Interest
to CRSS Constructors, Inc.,
FIDELITY AND DEPOSIT CO. OF
MARYLAND, SWISS REINSURANCE
AMERICA CORPORATION,
Successor-in-Interest to
North America Reinsurance
Corporation, MUNICH
REINSURANCE AMERICA, INC.,
Successor-in-Interest to
American Re-Insurance
Company, UNITED STATES
FIDELITY AND GUARANTY
COMPANY,

    Defendants-Appellants.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

PERINI CORPORATION, L. ROBERT
KIMBALL & ASSOCIATES, INC.,
NATKIN & COMPANY, JACOBS
FACILITIES, INC., Successor-
in-Interest to CRSS
Constructors, Inc., FIDELITY
AND DEPOSIT CO. OF MARYLAND,

SWISS REINSURANCE AMERICA
CORPORATION, Successor-in-
Interest to North America
Reinsurance Corporation,
MUNICH REINSURANCE AMERICA,
INC., Successor-in-Interest
to American Re-Insurance
Company, UNITED STATES
FIDELITY AND GUARANTY
COMPANY,

     Defendants,

       and

PERMA-PIPE, INC.,

     Defendant-Appellant.


Argued September 23, 2014 – Decided April 30, 2015

On appeal from the Superior Court, Appellate Division, whose opinion is reported at 425 N.J. Super. 62 (App. Div. 2012).

Andrew J. Carlowicz, Jr., argued the cause for appellant L. Robert Kimball & Associates, Inc. (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).

Peter J. Smith argued the cause for appellants Perini Corporation, Fidelity and Deposit Co. of Maryland, Swiss Reinsurance America Corporation, Munich Reinsurance America, Inc., and United States Fidelity and Guaranty Company (Connell Foley, attorneys; Mr. Smith and Thomas J. O'Leary, on the briefs).

James T. Malysiak, a member of the Illinois bar, argued the cause for appellant Jacobs Facilities, Inc. (Margolis Edelstein, attorneys; Bruce E. Barrett, on letter in lieu of brief).

2

Vincent P. Tomkiewicz, a member of the Illinois bar, argued the cause for appellant Perma-Pipe, Inc. (McLaughlin & Cooper, attorneys; Mr. Tomkiewicz, William F. Hartigan, Jr., and Edward F. Ruberry, a member of the Illinois bar, on the briefs).

Christopher A. Edwards, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Edwards, Wayne J. Martorelli, Deputy Attorney General, on the briefs).

Patrick J. Greene, Jr., submitted a brief on behalf of amicus curiae Building Contractors Association of New Jersey (Peckar & Abramson, attorneys; Mr. Greene, Charles F. Kenny, and Frank A. Hess, on the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In this appeal, the Court must determine when the ten-year limitations period of the statute of repose, N.J.S.A. 2A:14-1.1(a), begins to run with respect to the installation of a high temperature hot water (HTHW) system of a multi-phase construction project. In addition, the Court is asked to decide whether the statute of repose applies to claims pertaining exclusively to allegedly defective materials supplied for the HTHW system.

The sole focus of this case is an allegedly defective HTHW system that services the South Woods State Prison (South Woods). Built to mitigate the "over-crowded conditions" experienced by

3

the Department of Corrections, the contract governing the design and construction of the facility provided that housing units for more than 3000 inmates and all accessory structures would be constructed in three phases. These phases were designed to allow the State to begin housing prisoners in orderly and expeditious waves. Soon after the construction of South Woods was completed, the HTHW system experienced a series of widespread failures.

As a result of the failure of the HTHW system, the State of New Jersey (State) filed suit against the entities involved in the design and construction of South Woods and the HTHW system. The State filed its complaint on April 28, 2008, more than ten years after it began using the HTHW system and housing the first group of inmates, but less than ten years after the system was connected to all of the buildings constructed under the contract. The issue before the Court is whether the ten-year statute of repose commenced to run when the first inmates occupied the correctional facility or when the final buildings, including the 1000-plus bed minimum-security unit, were connected to the HTHW system.

We hold that the statute of repose does not begin to run on claims involving an improvement that serves an entire project -- including those parts constructed in multiple, uninterrupted phases -- until all buildings served by the improvement have

4

been connected to it.  Here, the statute of repose did not bar any of the State's claims because the three phases proceeded apace and the HTHW system was not complete until all buildings were connected to it.  In addition, we hold that the statute of repose does not apply to claims relating solely to manufacturing defects in a product used in the HTHW system.

I.

In February 1995, the State executed a contract with Perini Corporation (Perini) to design and build South Woods in Bridgeton (the Project), a 3176-bed medium- and minimum-security correctional facility, at a cost of approximately $203 million. Situated on an eighty-four-acre site, the Project consists of twenty-six buildings, including six general housing units, one detention unit, one minimum-security unit, and one inpatient/extended care unit.  The buildings received heat and hot water from the underground HTHW distribution system.  The Project was designed to be constructed in three phases, with all construction to be completed within 1095 days of issuance of the notice to proceed (NTP).

In its contract with the State, Perini was designated the designer/builder.  It designated L. Robert Kimball & Associates, Inc. (Kimball) as the architect, the civil engineering consultant, the structural engineering consultant, the mechanical engineering consultant, the electrical engineering

5

consultant, the detention equipment consultant, and the electronic security consultant. Perini also designated various other entities as principal contractors or main contractors for specific portions of the work. Defendant Natkin & Company (Natkin) was designated the principal contractor for heating, ventilation, and air conditioning (HVAC). Defendant Jacobs Facilities, Inc. (Jacobs), formerly known as CRSS Constructors, Inc., was retained by the State to provide construction oversight services.

The design that Kimball provided to Perini included an underground HTHW distribution system to serve the entire Project. It also included a central plant where water was heated by a series of boilers and heat exchangers and from which the hot water was distributed to the various buildings that comprised the Project. The hot water flowed through a network of underground pipes consisting of insulated black steel carrier piping within a galvanized steel casing. Perma-Pipe, Inc. (Perma-Pipe) manufactured the underground piping used in the HTHW system. Pursuant to its subcontract with Perini, Natkin furnished and installed the underground piping system and the boilers and heat exchangers housed in the central plant.

The contract provided that the Project would be constructed in three phases -- Phase I, Phase IIA, and Phase II -- but the entire project was to be completed 1095 calendar days following

issuance of the NTP.  The contract also provided that Phase I was to be completed no later than 730 days from issuance of the NTP, Phase IIA was to be completed no later than 910 calendar days from issuance of the NTP, and Phase II, no later than 1095 days from issuance of the NTP.

Phase I encompassed the central plant, perimeter fencing, site work within the perimeter, a patrol roadway, security and fire elements of the Project, and certain inmate housing units. The central plant contained the boilers and heat exchangers for the HTHW system.  Certificates of substantial completion for those various elements were executed on May 16, 1997. Approximately 960 inmates occupied the Phase I housing units soon thereafter.  Phase IIA encompassed several other buildings, including housing units for another 960 inmates.  Certificates of substantial completion for those buildings were executed between July 15, 1997 and October 27, 1997.  Phase II encompassed approximately ten buildings, including a minimum-security unit housing more than 1000 inmates and a garage.  The certificates of substantial completion for the minimum-security unit and the garage list May 1, 1998, as the date of substantial completion.  The various buildings comprising the Project were connected to the HTHW distribution system as they were completed.  A certificate of substantial completion was not issued specifically for the HTHW system.

II.

On April 28, 2008, the State filed a complaint against Perini, Kimball, Natkin, Jacobs, and Perma-Pipe in which it alleged that the HTHW system designed by Kimball, constructed by Perini and Natkin, and overseen by Jacobs failed in March 2000 and on several subsequent occasions. The State alleged that since the first failure in March 2000, "there have been a total of ten (10) HTHW carrier pipe failures, including failures in both the supply and return pipelines" and failures of isolation valves. The State alleged that the system failures were caused by various defects including design defects, defective site preparation for the pipes, defective pipes, and deficient system design. Due to recurrent system failures, the State concluded that the entire system had to be replaced. The State asserted breach of contract against Perini, negligence and professional malpractice against Kimball, negligence and breach of contract against Natkin, and breach of contract against Jacobs. Against Perma-Pipe, the State asserted a claim under the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, as well as breach of implied warranties, negligence, and strict liability in tort.

All defendants moved for summary judgment. Each defendant argued that the Project was substantially complete well before April 28, 1998; therefore, the statute of repose, N.J.S.A.

8

2A:14-1.1(a), barred the State's complaint. The State contended that the date of substantial completion of the Project was not until May 1, 1998, if not December 1998. The trial court granted summary judgment in favor of defendants Perini, Kimball, Natkin, and Jacobs. Relying primarily on the occupancy of inmates at the facility on or before April 28, 1998, the court determined that the HTHW system was substantially complete before April 28, 1998. Therefore, the trial court found that the State's complaint was barred by the ten-year statute of repose. On the other hand, the trial court denied Perma-Pipe's motion for summary judgment. The court concluded that Perma-Pipe was a manufacturer of goods and therefore its liability was governed by the PLA and the statute of repose did not apply to it.

On leave granted, the Appellate Division reversed the orders granting summary judgment in favor of defendants Perini, Kimball, Natkin, and Jacobs and affirmed the order denying summary judgment to Perma-Pipe. State v. Perini Corp., 425 N.J. Super. 62 (App. Div. 2012). The panel concluded that the separate phases of a project can have separate trigger dates for the statute of repose. Id. at 78. However, the panel held that regardless of the nature of the project, the statute of repose does not provide for separate trigger dates for components of a project that do not qualify as discrete "improvements to real

9

property." Ibid. The panel determined that the record did not support a finding that the HTHW system was a separate improvement to real property. Id. at 79. Therefore, the statute of repose was triggered when defendants substantially completed their work on the entire project. Ibid. Accordingly, the panel held that the statute of repose was triggered no earlier than May 1, 1998, the date when the minimum-security unit and garage were certified as substantially complete, and the State's April 28, 2008 complaint was timely filed. Ibid. In addition, the Appellate Division affirmed the trial court's holding that the statute of repose does not bar the State's claims against Perma-Pipe because it was a manufacturer of a product rather than a designer or installer of a system. Id. at 80-81.

We granted the contractor-defendants' motions for leave to appeal, 210 N.J. 476 (2012), and Perma-Pipe's cross-motion for leave to appeal, limited to the issue of whether the statute of repose applies to bar the State's claims against it, 211 N.J. 606 (2012). We also granted amicus curiae status to Building Contractors Association of New Jersey.

### III.

#### A.

Perini argues that the Appellate Division erred in concluding that the HTHW system was not a separate improvement

to real property within the meaning of the statute of repose. Perini maintains that the Appellate Division contravened its prior decisions in Port Imperial Condominium Ass'n v. K. Hovnanian Port Imperial Urban Renewal, Inc., 419 N.J. Super. 459 (App. Div. 2011) and Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179 (App. Div. 1978), certif. denied, 79 N.J. 489 (1979), which deemed structural improvements that are integral to the structure itself to be "improvements to real property." Accordingly, Perini submits that the prison could not function without the HTHW system, and the statute of repose was triggered when the State began to house inmates at South Woods more than ten years prior to the filing of the complaint by the State.

Similarly, Kimball argues that the statute of repose was triggered when the State took over beneficial use and operation of the HTHW system. Kimball emphasizes that the State began using the HTHW system and started to house inmates in May 1997, after the substantial completion of the site work and the central plant, which housed the boilers for the HTHW system. Accordingly, Kimball submits that the statute of repose was triggered in May 1997 when the State was able to use the HTHW system, and that the trigger date is not affected by the completion of the minimum-security unit and the garage.

B.

11

Perma-Pipe argues that it is also entitled to the protections of the statute of repose.  Perma-Pipe maintains that it was not merely a manufacturer of the piping for the HTHW system but was also involved in the design, planning, and installation of the system.  In addition, Perma-Pipe contends that it did not supply a "stock item" or standardized product for the Project, but rather a specialized system that required several design changes during construction.  Perma-Pipe also submits that the Appellate Division erred in interpreting Dziewiecki v. Bakula, 180 N.J. 528 (2004), as establishing a blanket proposition that manufacturers are not subject to the statute of repose.  Accordingly, Perma-Pipe contends that the State's complaint is untimely because the statute of repose was triggered in 1997 when the State began using the HTHW system and inmates occupied buildings in the first phase of the Project.

C.

The State maintains that its complaint was timely filed. In particular, the State argues that even though its claims relate only to the HTHW system, the ten-year limitations period is triggered by substantial completion of the entire Project, not just a portion of it.  It emphasizes that the HTHW system was designed to serve the entire Project.  As a result, the State submits that the Appellate Division correctly determined

12

that the statute of repose was triggered no earlier than May 1, 1998, when the entire Project was substantially complete.

Regarding Perma-Pipe's appeal, the State maintains that the statute of repose does not apply to product liability claims. Moreover, the State argues that it did not assert any claims pertaining to Perma-Pipe's other purported roles as designer and planner of the HTHW system.

## D.

Amicus curiae Building Contractors Association of New Jersey (BCANJ) urges this Court to reverse the Appellate Division's decision. BCANJ contends that the panel failed to give effect to the certificates of substantial completion, which should have been interpreted as also declaring the components of a project, such as the HTHW system, as substantially complete. In addition, BCANJ argues that the Appellate Division inappropriately stated in dicta that individual subcontractors working on a component of a project would have separate trigger dates under the statute of repose. BCANJ submits that this statement represents an unwarranted extension of this Court's decision in Daidone v. Buterick Bulkheading, 191 N.J. 557 (1997). In particular, BCANJ argues that Daidone, which involved an owner acting as general contractor, should be confined to the facts of that case. Otherwise, Daidone's holding will unfairly burden the last remaining party on a

13

project with liability for the failures of the other parties to the contract. Last, BCANJ asks this Court to hold that third-party claims for contractual indemnification and contribution will be deemed as having accrued on the date on which the plaintiff originally filed the action.

IV.

A.

The first issue before the Court is whether defendants Perini, Kimball, Natkin, and Jacobs are entitled to summary judgment and dismissal of the complaint filed against them based on the statute of repose. In reviewing a grant or denial of summary judgment, an appellate court is bound by the same standard as the trial court under Rule 4:46-2(c). Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013); Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). To the extent that the grant or denial of summary judgment is based on an issue of law, we owe no deference to an interpretation of law that flows from established facts. Kearny, supra, 214 N.J. at 92. Here, the date of the

14

commencement of the limitations period of the statute of repose is a question of law subject to plenary review. See ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.

Prior to the enactment of the statute of repose, liability for deficiencies in a construction project was governed by the common law "completed and accepted rule." E.A. Williams, Inc. v. Russo Dev. Corp., 82 N.J. 160, 165 (1980). In Totten v. Gruzen, 52 N.J. 202, 210 (1968), this Court repudiated the rule, replacing it with the limitations on liability derived from ordinary negligence principles.

In 1967, New Jersey adopted a statute of repose. N.J.S.A. 2A:14-1.1(a) provides as follows:

> No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, . . . arising out of the defective or unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

15

As discussed in several prior opinions of the Court, the statute of repose responded to the expanding liability of contractors, builders, planners, and designers occasioned by the rejection of the "completed and accepted rule," the expanding application of the discovery rule, and the evolving development of strict liability in tort for injuries arising from defective conditions in newly constructed buildings.  See, e.g., Horosz v. Alp Estates, Inc., 136 N.J. 124, 128 (1994); Newark Beth Israel Med. Ctr. v. Gruzen, 124 N.J. 357, 362 (1991); E.A. Williams, supra, 82 N.J. at 165-66; O'Connor v. Altus, 67 N.J. 106, 117-19 (1975); Rosenberg v. Town of N. Bergen, 61 N.J. 190, 194-98 (1972).  The statute of repose is construed broadly to effectuate its purpose.  Town of Kearny, supra, 214 N.J. at 93.

The statute of repose applies only to work that constitutes an "improvement to real property."  N.J.S.A. 2A:14-1.1(a). Generally, "an improvement to real property permanently increases the property's value."  Ebert v. S. Jersey Gas Co., 157 N.J. 135, 139 (1999).  When a court must determine whether work is an improvement to real property, it should consider "'whether the modifications or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property, and is permanent in nature.'"  Ibid. (quoting Van Den

16

*Hul v. Baltic Farmers Elevator Co.*, 716 *F.*2d 504, 508 (8th Cir. 1983)).

A service line carrying natural gas from a central main onto a residential property is an improvement to real property, *id.* at 139-40, as is an in-ground swimming pool installed at a home, *Dziewiecki*, *supra*, 180 *N.J.* at 533. A structural improvement, such as a transfer switch assembly cabinet, is an improvement to real property when it is "required for the structure to actually function as intended." *Brown*, *supra*, 163 *N.J. Super.* at 195-96.

Calculation of the ten-year limitations period for the statute of repose generally commences one day after issuance of the certificate of substantial completion for the project. *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 *N.J.* 84, 118 (1996). In *Russo Farms*, the Court explained that "'[s]ubstantial completion has a definite meaning in the construction industry.'" *Id.* at 117 (quoting *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 *N.J.* 479, 500 (1992), overruled on other grounds by *In re Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 *N.J.* 349 (1994)). As defined by the American Institute of Architects and incorporated in its model contract, it is "the date when construction is sufficiently complete . . . so the owner can occupy or utilize the building." *Ibid.* (internal quotations marks omitted). To

17

be sure, there may be instances in which another event signals the commencement of the limitations period. However, any departure from the date when the certificate of substantial completion is issued is driven by the facts of the individual case. For example, in Town of Kearny, supra, the Court held that the ten-year period under the statute of repose commenced on the date the first temporary certificate of occupancy was issued because the certificates of substantial completion bore neither the date of issuance nor the date of project completion. 214 N.J. at 95-96.

As noted in Town of Kearny, "[o]ur caselaw distinguishes between defendant contractors who are hired to perform limited services and defendants with supervisory responsibilities that span the entire project, in determining the date upon which the ten-year period begins for purposes of the [statute of repose]." Id. at 93. For example, in Daidone, supra, the homeowners acted as the general contractor and subcontracted with several professionals and contractors to perform specific tasks in the design and construction of their home. 191 N.J. at 560-61. An architectural firm designed the house and another contractor installed the pilings for the home's foundation. Ibid. Following completion of their work, neither the architect nor the piling contractor performed any other work on the project. The Court concluded that the ten-year period of the statute of

18

repose commenced to run the day on which each contractor completed all work for the project. Id. at 566. Similarly, in Hopkins v. Fox & Lazo Realtors, 242 N.J. Super. 320, 322 (App. Div. 1990), an architect had been retained by a residential developer to provide plans for a prototype house. The architect performed no other work on the house plans and did not supervise the construction of any houses erected by the developer. Ibid. Under these circumstances, the appellate panel concluded that "the statute's purpose is best served by finding that the ten-year statutory period begins when the architect or contractor completes its task with respect to the property involved in the claim." Id. at 328.

By contrast, when a designer, planner, or person participating in the construction of an improvement to real property has continuing responsibility throughout the construction of the project or a specific improvement, the ten-year limitations period commences when the project has been certified as substantially complete. Town of Kearny, supra, 214 N.J. at 94. Thus, in Town of Kearny, the statutory ten-year period commenced for the designer, who supervised construction of a police/fire facility and certified substantial completion of the work, when the first temporary certificate of occupancy was issued. Ibid. In Welch v. Engineers, Inc., 202 N.J. Super. 387, 396 (App. Div. 1985), the Appellate Division refused to

19

segment a contractor's responsibilities into stages for triggering the ten-year statute of repose period because the contractor had continuing responsibility for the project as a designer and builder.  The panel reasoned as follows:

> The functions of design, planning, supervision or construction of improvements to realty could be treated either separately or unitarily when a single defendant performs two or more or indeed all of these functions, as [Engineers, Inc.] did here, without distorting or diluting the language used by the Legislature. . . .  [W]e think the Legislature most likely meant that when a person rendered any construction-related services on a particular job, finished them and walked away from the job-site with the work accepted, that person could look back ten years and one day "after the performance or furnishing of such services and construction," N.J.S.A. 2A:14-1.1, and know there was repose from liability. We do not think that the Legislature intended to let repose turn on serial cut-off dates accruing through various stages of the work, turning on fact-sensitive determinations and various analytic approaches to construction staging.
>
> [Ibid.]

### C.

Here, the State argues that the Project must be considered a unitary undertaking, although the work was divided into phases and each individual building was occupied upon its completion. It emphasizes that construction continued, uninterrupted, on other housing units and accessory structures even after the first wave of inmates arrived.  Stated differently, the

20

completion of the Project did not experience a lull in activity weeks, months, or years in length. Further, Perini, Natkin, and Jacobs were involved continuously from the commencement of construction through the completion of the Project. Kimball, as the designer with supervision responsibilities, was involved continuously from the very inception of the Project through completion of construction.

The State also contends that the certificate of substantial completion issued for the central plant, which housed the boilers used for the HTHW system, did not encompass the entirety of the HTHW system. Rather, the network of underground pipes was a critical element of the HTHW system. The State insists that the system could be considered substantially complete only when the last of the buildings it was designed to service were connected to the system.

Perini, Kimball, Natkin, and Jacobs emphasize that the Project was constructed in phases; therefore, calculation of the ten-year period should commence with the completion of each phase of the Project. In addition, they assert that the central plant was substantially completed on May 15, 1997, thereby triggering commencement of the ten-year repose period on May 16, 1997, the day that the State assumed possession of the building. Based on that calculation, the ten-year period for filing the State's complaint expired in May 2007, many months before the

21

April 28, 2008 filing date. Implicit in this argument is the notion that the certificate of substantial completion for the central plant encompassed the entire HTHW system.

Viewing the facts contained in the summary judgment record in the light most favorable to the State, the non-moving party, we conclude that the statute of repose does not bar the State's complaint against defendants Perini, Kimball, Natkin, and Jacobs. Several factors compel this conclusion.

As a threshold matter, we conclude that the HTHW system is an improvement to real property. Therefore, the work performed on this system falls within the scope of the statute of repose. We reject, however, the argument advanced by Perini and Kimball that the statute of repose was triggered on May 16, 1997, after the certificates of substantial completion were executed for the central plant and the housing units for the first wave of inmates.

There can be no serious argument that the HTHW system is not an improvement to real property. The system provides heat and hot water to every building in the Project. The HTHW system does not simply enhance the use of and add value to the Project; South Woods could not function as a correctional facility housing more than 3000 inmates without heat and hot water.

However, having determined that the HTHW system is an improvement to real property within the scope of the statute of

22

repose does not lead to the inexorable conclusion that completion of the central plant and occupancy of the initial group of inmate housing units triggered the ten-year statute of repose limitations period. A "system" is "a regularly interacting or interdependent group of items forming a unified whole." System Definition, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/system (last visited April 17, 2015). Here, the HTHW system is designed to form a unified whole that interacts with and is connected to every structure of the prison complex. The central plant where the boilers are located may be viewed as the origination point of this system, but it is by no means independent of the underground pipes that are connected to it to bring heat and hot water to every facet of the prison complex. Neither the nature of the HTHW system, the course of construction, nor defendants' role in the construction of the Project permits the issue date of the Phase I certificates of substantial completion to trigger the statute of repose time calculation.

Defendants Perini, Kimball, Natkin, and Jacobs were involved continuously throughout construction of the Project. Defendant Perini was the general contractor for the Project. Natkin, as the HVAC subcontractor, and Jacobs, as the construction supervisor, oversaw compliance with plans and specifications for every aspect of the Project. They remained

23

continuously involved in the Project much like the designer and general contractor in Welch, and the designer/construction supervisor in Town of Kearny. Kimball not only designed the Project but also provided oversight and consultation services throughout construction of the Project. Unlike the architect in Hopkins, who submitted a prototype plan for a house and had no further involvement in the construction of any house based on that plan, or the designer in Daidone, who did nothing more than submit plans for the plaintiffs' house, Kimball not only designed the Project but also remained continuously involved in the execution of its design.

The record also provides no support for the position advanced by Perini, Kimball, Natkin, and Jacobs that the HTHW system was substantially complete on May 16, 1997, after the issuance of the certificate of substantial completion for the central plant. Such a position ignores the design of the HTHW system of which the boilers are only a component part, albeit a critical part. This argument also ignores that the HTHW system was not designed to only serve the buildings in Phase I that house 960 inmates.

The HTHW system was designed to serve every building in the Project. Therefore, contrary to defendants' assertion, it is of no significance that the minimum-security unit is located outside of the fenced perimeter of the Project. The minimum-

24

security unit, housing more than 1000 inmates, is a critical element of the Project and receives all of its heat and hot water from the HTHW system.  As a system designed to supply heat and hot water to every building in the Project, we are loath to embrace an application of the statute of repose that would permit separate trigger dates for each section of the HTHW system as a building it serves comes on line.  Such an approach is inconsistent with the purpose of the statute of repose and frustrates the ability of the owner to evaluate whether the system, as designed and constructed, operates as intended.

The record also provides no support for the contention advanced by Perini, Kimball, Natkin, and Jacobs that the completion of each phase of the contract triggered the statute of repose for all work performed for that phase.  To the contrary, the record demonstrates work on the Project flowed virtually seamlessly from phase to phase once the NTP issued. The record also demonstrates that the purpose of the division of the Project into phases was to permit the Department of Corrections to address system-wide overcrowding by moving inmates into a portion of the facility while construction proceeded on the balance of the Project.

It is for these reasons that defendants' concern that selecting the date of the certificate of substantial completion issued for the minimum-security unit and the garage will subject

25

them and other similarly situated contractors in other cases to endless liability is unfounded. The Project had a discrete start and end date. The improvement at issue provides every building in the Project with a critical service -- heat and hot water. There were no lengthy gaps of time between one phase and another. Under these circumstances, it is only sensible that we focus on the issuance of the certificates of substantial completion for the last buildings connected to the HTHW system as the trigger for calculating the commencement of the ten-year repose period.

Neither the contract nor the specifications require a separate certificate of substantial completion for the HTHW system. No certificate ever issued for only the HTHW system. The failure to require a separate certificate for the HTHW system supports the conclusion that neither the owner nor the designer and builder ever contemplated that the system would be completed on a piecemeal basis. Rather, as an improvement designed to service every building in the facility, it was complete only when the HTHW system was connected to every building it was designed to serve.[1]

---

[1] The parties are free to stipulate to a substantial completion date via contract. See Town of Kearny, supra, 214 N.J. at 95; Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 170 (App. Div. 2007).

26

In sum, we conclude that the ten-year statute of repose limitations period commenced to run on the day after the final certificates of substantial completion issued for the final buildings served by the HTHW system. The final certificates were issued on May 1, 1998. The State filed its complaint on April 28, 2008. The statute of repose therefore does not bar the complaint.

V.

Finally, we address the Perma-Pipe appeal. Perma-Pipe manufactured and supplied the piping required for the HTHW system. It also participated in laying the pipe throughout the site. Perma-Pipe acknowledges that the statute of repose is normally not extended to similarly situated manufacturers of construction materials. It maintains, however, that it was inextricably involved in the design and fabrication of the HTHW system and is thereby within the ambit of the statute of repose.

In its complaint, the State asserts three causes of action against Perma-Pipe: breach of implied warranties of merchantability and fitness for a particular purpose (Count Five); negligence and strict liability in tort (Count Six); and breach of its duty under the PLA (Count Seven). It is undisputed that defendant Kimball designed the Project in its entirety and the design included the HTHW system. Perma-Pipe

27

manufactured the insulated black steel carrier piping used in the HTHW system.

The statute of repose applies when

> (1) the injury sustained by plaintiff resulted from a defective and unsafe condition of an improvement to real property; (2) [the defendant was] responsible for performing or furnishing the design, planning, surveying, supervision of construction, or construction of the improvement; and (3) the injury occurred more than ten years after the performance or furnishing of the services.
>
> [Dziewiecki, supra, 180 N.J. at 531-32.]

By contrast, manufacturers of standardized products and sellers of such products are not subject to the statute of repose, but rather "are covered by the statute of limitations applicable to the [PLA]." Id. at 532. When a person or entity has served as a manufacturer and an installer and thereby falls under the coverage of the statute of repose and the PLA, and the cause of the injury is attributable to both, the responsibility should be allocated between the two. Id. at 533. The practical effect of allocation may render one of the causes of the injury actionable and the other non-actionable, if the civil action is not commenced within ten years of substantial completion of the improvement. Ibid.

The facts in Dziewiecki illustrate the distinction between manufacturing/distribution and installation. In that case, the Court held that the inground pool surrounded by a concrete apron

28

was an improvement to real property. Id. at 532. The installer of this improvement fell within the coverage of the statute of repose. Id. at 533. On the other hand, the seller and distributor of a pool kit composed of galvanized steel walls, a vinyl liner, braces behind the walls, and a coping package "did not fall within the class of persons or entities protected by the [statute of repose]." Id. at 531.

A review of the record, particularly the November 7, 1995 letter accompanying Perma-Pipe's proposal and the terms and conditions of the provision of its product, demonstrate that Perma-Pipe's role was that of a manufacturer of a product used in the construction of the HTHW system. For example, the summary of Perma-Pipe's proposal in the November 1995 letter states that "Perma-Pipe's standard hot water distribution system is a completely drainable and dryable system." (Emphasis added). Perma-Pipe stated that the piping and fittings would be manufactured to job specifications using standard straight sections of piping and "our Poly-Piping and Kits product line." It also proposed "to furnish our POLY-THERM product for the chilled water distribution system for the . . . project."

In its Terms and Conditions of Sale, Perma-Pipe also advised the buyer that fabrication would not commence until the buyer provided "all job dimensions and angles" and any deviations "from the consulting engineer's designs must be

29

counter-approved by the engineer" before fabrication would commence.  In addition, the Terms and Conditions of Sale expressly stated that the buyer would compensate Perma-Pipe for any costs incurred by it due to changes in drawings or dimensions.

To be sure, the record reveals that Perma-Pipe provided technical assistance and support during installation.  The record also demonstrates that Natkin, not Perma-Pipe, installed the piping.  In short, while the piping for the Project served a specialized purpose to meet the specific dimensions and specifications of the system designed by Kimball and installed by Natkin, the piping and the various fittings manufactured by Perma-Pipe are nonetheless a product and Perma-Pipe cannot take refuge in the statute of repose.

VI.

In sum, we hold that the HTHW system is an improvement to real property and falls within the scope of the statute of repose.  We reject, however, the position advanced by defendants Perini, Kimball, Natkin, and Jacobs that the ten-year statute of repose limitations period commenced to run when the HTHW system began to supply heat and hot water to the buildings completed in Phase I.  The HTHW system was designed to supply heat and hot water not to some but to all buildings in the system, including the 1000-plus bed minimum-security unit substantially completed

30

on May 1, 1998.  The statute of repose for a single improvement that is intended to supply critical utilities, such as heat and hot water, cannot be considered substantially complete until it has been connected to every building it is intended to serve. In this appeal, the multi-phase construction schedule had no effect on when the statute of repose limitations period commenced.  This three-phase project proceeded seamlessly from one phase to another with no substantial gaps in construction. We need not address in this appeal the implications for statute of repose purposes of a multi-phase project that proceeds with substantial idle intervals between phases.

Finally, we conclude that Perma-Pipe supplied a product that was incorporated in the HTHW system and is therefore not a professional contractor whose services fall within the scope of the statute of repose.

VII.

The judgment of the Appellate Division is therefore affirmed as modified.

CHIEF JUSTICE RABNER; JUSTICES ALBIN and SOLOMON; and JUDGE FUENTES (temporarily assigned) join in JUDGE CUFF's opinion. JUSTICES LaVECCHIA, PATTERSON and FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.  A-121/122/123/135          SEPTEMBER TERM 2011

ON APPEAL FROM      Appellate Division, Superior Court


STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

PERINI CORPORATION, ET AL.,

    Defendants-Appellants.
_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

PERINI CORPORATION, ET AL.,

    Defendants,

        and

PERMA-PIPE, INC.,

    Defendant-Appellant.


DECIDED _____ April 30, 2015 _____

_____ Chief Justice Rabner _____ PRESIDING

OPINION BY _____ Judge Cuff (temporarily assigned) _____

CONCURRING/DISSENTING OPINION BY_____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRMED AS MODIFIED | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE ALBIN | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| JUDGE FUENTES (t/a) | X | |
| TOTALS | 5 | |