**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5369-16T1

MERIDIAN NURSING and
REHABILITATION INC.,

     Plaintiff-Respondent,

v.

EDMUND SKWARA,

     Defendant-Appellant.

_____

     Argued December 12, 2018 – Decided January 18, 2019

     Before Judges Koblitz, Ostrer and Currier.

     On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0956-15.

     Carl G. Archer argued the cause for appellant (Archer Law Office, LLC, attorneys; Grant S. Ellis, on the briefs).

     Robyn B. Gigl argued the cause for respondent (GluckWalrath, LLP, attorneys; Robyn B. Gigl, of counsel and on the brief).

PER CURIAM

Defendant Edmund Skwara's mother suffered a stroke that left her mentally incapacitated, unable to speak and partially paralyzed. On September 12, 2013, she was admitted to plaintiff Meridian Nursing and Rehabilitation Inc.'s (Meridian) facility. Because Ms. Skwara was incapable of entering into an agreement with Meridian, defendant entered into a binding agreement that provided for long-term care. Meridian agreed to provide nursing care, food, shelter, and other services in return for defendant coordinating payment for his mother's care from her resources, either as a private pay patient or through Medicaid, if she qualified. Defendant signed the agreement as the responsible party almost two weeks after his mother was admitted. Ms. Skwara was subsequently found ineligible for Medicaid because she had too many financial resources to qualify and Meridian sued defendant personally. The trial court granted partial summary judgment to Meridian on liability and found damages in the amount of $140,246, the sum Medicaid would have paid. Defendant appeals from the June 23, 2017 final judgment in that amount. Because defendant is not personally responsible for his mother's nursing care cost, and his failure to comply with the contract he signed as the "responsible party" by using his best efforts to exhaust his mother's resources is disputed, we reverse.

A-5369-16T1

In assuming contractual responsibility to coordinate payment through Medicaid, if his mother qualified, defendant agreed to apply for Medicaid on his mother's behalf, including providing all information requested by Medicaid, and further that he would act to establish and maintain her Medicaid eligibility. Defendant agreed that, if his mother did not qualify for Medicaid, she would be obligated to pay for Meridian's services as a private pay resident. Ms. Skwara continues to reside at the facility.

Pursuant to his contractual obligations, defendant applied for Medicaid assistance on behalf of his mother. The application was denied by the Ocean County Board of Social Services (OCBSS) because it found that Ms. Skwara was "over-resource[d]." See N.J.A.C. 10:70-5.1(a).

Defendant requested a fair hearing, which was held in July 2014 before an Administrative Law Judge (ALJ). The ALJ did not conclude that Ms. Skwara was over resourced. He did find, however, that a transfer of real property owned by Ms. Skwara, which had a pre-transfer value of $332,000.00, to Skwara Properties LLC (Skwara LLC), owned jointly by Ms. Skwara and defendant, and the subsequent mortgaging of that property by Skwara LLC and a second LLC (HOP 33), owned primarily by defendant, constituted a transfer of assets too close in time to allow Medicaid eligibility. 42 U.S.C. § 1396p(c)(1)(A);

3

N.J.S.A. 30:4D-3(i)(15)(b); N.J.A.C. 10:71-4.10(a).  The ALJ remanded to the OCBSS to determine the exclusion period.

Defendant, on behalf of his mother, appealed for agency review to Director Valerie Harr, Department of Human Services, Division of Medical Assistance and Health Services, who issued a final agency decision on December 19, 2014.  The Director upheld the denial of Medicaid, but rejected the ALJ's finding.  In her decision, the Director found that Ms. Skwara was ineligible because she owned "excess resources," rather than having gifted an asset.  She found that the 2010 appraised market value of the fully developed property was $3,000,000.[1]  Based on mortgages of $2,790,456 taken out to construct a restaurant, she found Ms. Skwara's seventy-five percent ownership interests in Skwara LLC was worth $157,158.  The Director also found that HOP 33 was paying rent to Skwara LLC that exceeded the LLC's loan payments, resulting in some income to Skwara LLC.  The Director explained:  "Petitioner does not own the IHOP or the property; she is the owner of a company that owns the property and rents to another company that operates the IHOP."  The

---

[1]  The Director further found that Ms. Skwara had not submitted an updated appraisal of the property.

Director did not determine whether defendant did or did not have the ability to liquidate Ms. Skwara's asset, the seventy-five percent interest in Skwara LLC.

The business office manager at Meridian testified before the trial court regarding the daily Medicaid reimbursement rates from January 2013 through October 2016. The trial court subsequently found that, had defendant not breached the contract by failing to obtain Medicaid, plaintiff would have received $140,246 in Medicaid payments from September 12, 2013 through April 30, 2017. The private pay rate for the same services for the same time period would have been much greater.

Defendant argues that plaintiff "cannot require a guarantee of payment from anyone other than the resident . . . ." Defendant cites Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 105 (2014), for the proposition that N.J.S.A. 30:13-3.1(a) prevents money judgments against third parties. In Manahawkin, the Court "caution[ed] nursing homes and their counsel" that the Nursing Home Act's "constraints on the liability of a 'Responsible Party' should be clearly reflected in contracts and communications between facilities and individuals who arrange payment on a resident's behalf." Id. at 107. That provision of the Nursing Home Act, N.J.S.A. 30:13-1 to -17, states:

> a. A nursing home shall not, with respect to an applicant for admission or a resident of the facility:

. . . .

(2) require a third party guarantee of payment to the facility as a condition of admission or expedited admission to, or continued residence in, that facility; except that when an individual has legal access to a resident's income or resources available to pay for facility care pursuant to a durable power of attorney, order of guardianship or other valid document, the facility may require the individual to sign a contract to provide payment to the facility from the resident's income or resources without incurring personal financial liability.

On February 13, 2017, the court, in denying defendant's motion for summary judgment based on this statute, and granting plaintiff's motion for partial summary judgment for breach of contract liability, articulated the following reasons:

Well, what I have before me is your motion for summary judgment and then theirs on Counts 1 and 2. And with respect to your motion, I'm going to deny the application for summary judgment. I can sit here and recount all the facts that were presented by the parties, but there really is no dispute. Ms. Skwara has been hospitalized. She couldn't sign the admission papers herself. Her son . . . did that. And he signed as the responsible party.

What's significant to the [c]ourt is the hearing that was held on November 6th, 2014 by [the ALJ] makes certain specific findings of fact and conclusions. . . . While not finding that Ms. Skwara was over-resourced, [the ALJ] found that there was an issue with respect to the transfer

6

of the real property that was owned by the defendant's mother. And so the [c]ourt does have to consider that.

[He] also made some additional comments, comments about the lack of cooperation and the information that was not produced by the defendant during the proceeding. . . . I'm not putting any specific weight on that at this juncture.

However, [the Director] did issue a final decision that was on December 2014 which those specific findings made certain evaluations of the property that you're both familiar with, and they're incorporated in her written opinion. So I'll just leave that the way it is.

What's also clear is that that decision was not appealed by the defendant. The defendant also never completed the -- another Medicaid application after that was denied. He, the defendant, is not paying the plaintiff's rate at this juncture, some three plus years of admission into the facility. And plaintiff has suffered damages as a result of that breach of the obligation.

Now you made certain very detailed arguments with respect to the validity of this contract. I find that the agreement is enforceable. I didn't think that there was any particular reason to invalidate that contract. I didn't find that it violated any federal or state laws. I find that the defendant's obligation under the agreement was to liquidate his mother's assets. And that issue was already litigated and affirmed and confirmed by the final decision maker on these matters. Certainly, a judge with much more expertise in this area.

In interpreting contracts, the basic rule remains to determine the intention

of the parties from the language of the contract, giving effect to all of its parts

so as to accord a reasonable meaning to its terms. <u>Simonetti v. Selective Ins. Co.</u>, 372 N.J. Super. 421, 428 (App. Div. 2004). When the terms are clear and unambiguous the court must enforce the contract as it finds it; the court cannot make a better contract for the parties than they themselves made. <u>Ibid.</u>

"The interpretation or construction of a contract is generally a legal question" for the court. <u>Peterson v. Twp. of Raritan</u>, 418 N.J. Super. 125, 133 (App. Div. 2011). To the extent any ambiguity exists, that is, to the extent that a contractual term is susceptible of more than one reasonable interpretation, <u>Powell v. Alemaz, Inc.</u>, 335 N.J. Super. 33, 44 (App. Div. 2000), a court may discern the parties' intent from evidence bearing on the circumstances of the agreement's formation, <u>Conway v. 287 Corporate Ctr. Assocs.</u>, 187 N.J. 259, 269 (2006), and of the parties' behavior in carrying out its terms, <u>Savarese v. Corcoran</u>, 311 N.J. Super. 240, 248 (Ch. Div. 1997), <u>aff'd o.b.</u>, 311 N.J. Super. 182 (App. Div. 1998). The required factual inquiry to resolve any such ambiguity typically precludes summary judgment unless the evidence is so one-sided as to compel judgment as a matter of law for one party or the other. <u>Great Atl. & Pac. Tea Co., Inc. v. Checchio</u>, 335 N.J. Super. 495, 502 (App. Div. 2000).

When reviewing a trial court's grant of summary judgment, we are "bound by the same standard as the trial court under Rule 4:46-2(c)." State v. Perini Corp., 221 N.J. 412, 425 (2015). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To the extent that the grant or denial of summary judgment is based on an issue of law, [this court] owe[s] no deference to an interpretation of law that flows from established facts." Perini Corp., 221 N.J. at 425.

In his agreement with Meridian, defendant represented that his mother did not recently make gifts, to deplete her assets, in the hopes of qualifying for Medicaid. The agreement states:

> The [r]esident and/or the [r]esponsible [p]arty represent that neither the [r]esident nor the [r]esponsible [p]arty has made a gift in contemplation of the execution of this [a]greement or within five (5) years of the [r]esident anticipating making an application for Medicaid, and have not agreed to make such a gift which would render the [r]esident ineligible for Medicaid or impair the [r]esident's ability to pay fees and charges while this [a]greement is effective.

Defendant engaged in business dealings with his mother two years before she was admitted to Meridian's facility. Defendant contends that his mother received value for the transfer of her assets, in the form of an interest in Skwara LLC. Had Director Harr found that Ms. Skwara gifted defendant, he may have been personally liable to repay such a gift, given his representation in the contract. But, given the Director's contrary finding, we need not determine the proper remedy for such a breach.

By signing the agreement as the responsible party, defendant undertook certain contractual obligations in connection with his mother's Medicaid application. His obligations included: timely providing all necessary information to Medicaid; providing the facility with copies of the information given to Medicaid; taking all necessary steps to ensure the applicant's assets were appropriately reduced; and continuing to make payment from the resident's assets until assistance was granted. Once Director Harr found Ms. Skwara was ineligible for Medicaid because she was over-resourced and had income, defendant had a contractual obligation to use her funds to pay for her care. He did not, however, have an obligation to pay out of his own funds.

Defendant <u>is</u> obligated to liquidate his mother's asset—a portion of the business they formed. Defendant argues "Skwara Properties LLC was insolvent

and impossible to sell without spending money." Defendant offered Ms. Skwara's seventy-five percent ownership interest in Skwara Properties LLC to plaintiff, which turned down the offer because Meridian is not in the business of owning a company that rents property to another company operating a restaurant.

We reject Meridian's argument that the agency's decision that Ms. Skwara was over-resourced collaterally estops defendant from disputing whether he could have liquidated Ms. Skwara's seventy-five percent ownership in the Skwara LLC., and, if so, how much he would have received from the sale. The issue of compliance with the nursing home contract was not before the agency. See Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994), for the proposition that in order for collateral estoppel to apply, "the issue to be precluded [must be] identical to the issue decided in the prior proceeding").

The agency's decision and its subsidiary findings would have been entitled to collateral estoppel effect in an action by Meridian against Ms. Skwara. See Dawson, 136 N.J. at 20-21 (explaining collateral estoppel requires a final determination of the same essential issue after litigation with the same party). There was a binding Medicaid determination that Ms. Skwara owned an asset of

value. Had the nursing home obtained a judgment against Ms. Skwara, or accepted defendant's offer of her portion of the business, it might have been able to sell her asset, perhaps through the appointment of a receiver or fiscal agent. This resolution would have the additional benefit of making Ms. Skwara then eligible for Medicaid. The current stand-off does not benefit plaintiff and puts Ms. Skwara in a precarious position with regard to her care.

The grant of summary judgment as to liability is reversed. Defendant is not liable for his mother's cost of care based on the Medicaid determination alone. A dispute remains as to whether defendant could have sold Skwara, LLC, the company he owned with Ms. Skwara, given its encumbrances. The Director did not take up the question of whether defendant took all appropriate steps to liquidate the asset owned by Ms. Skwara. What happened to any income generated by Skwara LLC is also unclear.

Although the trial court found no "particular reason to invalidate [the nursing home] contract," and did not "find that it violated any federal or state laws," we do not preclude defendant from raising contract issues on remand after discovery is completed.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12